## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GREAT PLAINS PETROLEUM, LLC,

*Plaintiff,*

v.

ELK ENERGY HOLDINGS, LLC,

*Defendant.*

Case No. 25-1089-EFM-BGS

## MEMORANDUM AND ORDER

Before the Court is a Motion for Preliminary Injunction filed by Plaintiff, Great Plains Petroleum, LLC ("GPP"). GPP is the majority interest owner of the Lippelmann Lease—an oil and gas lease located in Thomas County, Kansas. Defendant, Elk Energy Holdings, LLC ("Elk Energy"), is the minority owner and operator of the Lippelmann Lease. GPP requests this Court to restrain Elk Energy from acting as operator of the lease during the pendency of this action, enjoin Elk Energy from taking possession of GPP's gross revenues from the lease, and authorize a successor operator to commence operating the lease. The Court held a hearing on Plaintiff's Motion and has considered the evidence presented and the parties' arguments. For the reasons stated herein, the Court denies GPP's motion.

### I.    Factual and Procedural Background

The Lippelmann Lease is a highly productive oil and gas lease in Thomas County, Kansas. GPP is the 85% working interest owner of the lease. Elk Energy holds the other 15% working interest and operates the lease. As part of the agreement governing the parties' relations, Elk

Energy receives the gross revenue from the operation, deducts the operating expenses, and either pays or bills GPP the difference.

The Lippelmann Lease wells produce saltwater that must be disposed of somewhere. On its own, Elk Energy arranged to lease a nearby saltwater disposal well to dispose of the saltwater. Elk Energy charges the working interest owners (both GPP and Elk Energy) $1.00 per barrel to dispose of the saltwater produced from the Lippelmann Lease into Elk Energy's leased saltwater deposit well.[1]

Unhappy with this arrangement, in June 2024, GPP proposed to convert one of the unproductive wells on the Lippelmann Lease into a saltwater disposal well. GPP expects that this would dramatically reduce operating expense by eliminating the need for Elk Energy to charge the working interest owners for saltwater disposal. Elk Energy declined GPP's proposal. GPP considered this declination a breach of the agreement governing the parties' relations. Citing this alleged breach as good cause for removal, as the majority interest owner, GPP elected to remove Elk Energy as the operator of the Lippelmann Lease and found a replacement operator.

Elk Energy disputes that its declination to convert one of the Lippelmann Lease wells into a saltwater deposit well constituted a breach of the parties' agreement. Further, Elk Energy asserts that GPP cannot replace it as operator of the Lippelmann Lease because the agreement requires "good cause" to remove Elk Energy.

GPP filed this suit on May 6, 2025. Plaintiff's Complaint contains four Counts. Most relevant here, Count II is a request for judgment declaring that GPP had good cause to remove Elk

---

[1] One of GPP's primary concerns is that Elk Energy is overcharging for the disposal of this saltwater. At the hearing on this Motion, GPP offered evidence that the industry rate for saltwater disposal in the manner that Elk Energy utilizes is $0.05–0.10 rather than $1.00.

Energy as the operator of the Lippelmann Lease and an order requiring Elk Energy to transfer operations to GPP's newly chosen operator.

GPP filed the present Motion for Preliminary Injunction on December 9, 2025. Elk Energy filed its Response on January 5, 2026. The Court held a hearing on the matter on January 6, 2025.

## II.     Legal Standard

Preliminary injunctions are extraordinary remedies—courts will not grant them as a matter of right.[2] "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."[3] Thus, preliminary injunctions preserve the status quo pending the outcome of the case.[4] The legal standard for a preliminary injunction is well-established. Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest."[5]

## III.     Analysis

GPP's request is subject to a heightened scrutiny. The Tenth Circuit has identified three types of injunctions that are specifically disfavored and subject to close scrutiny: (1) ones that alter

---

[2] *Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1277 (D. Kan. 2011).

[3] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005).

[4] *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986).

[5] *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (citations omitted).

the status quo; (2) mandatory preliminary injunctions; and (3) ones that grant the movant all the relief he could recover at the conclusion of a trial on the merits.[6]

GPP's requested preliminary injunction hits all three disfavored categories. First, it would alter the status quo by removing Elk Energy as the current operator of the Lippelmann Lease. The status quo is the "last peaceable uncontested status existing between the parties before the dispute developed."[7] The Court finds that the last peaceable uncontested status to be Elk Energy operating the Lippelmann Lease, as it has since at least 2017. Second, GPP's request is one for a mandatory preliminary injunction in that it would require Elk Energy to take affirmative action to transfer access and control over its records, equipment, and other information to the new operator. Further, the Court is concerned that it might be required to supervise this transfer of operations. This concern confirms that this injunction is rightly characterized as mandatory.[8] Third, to grant the relief to GPP now would be to give it all that it prays for in Count II.[9] Because GPP's requested preliminary injunction is the type that is specifically disfavored three times over, the Court will closely scrutinize the request.

The Court's analysis begins and ends with a discussion of the irreparable harm element because GPP cannot show that it will suffer irreparable harm without this Court's intervention.

---

[6] *Schrier*, 427 F.3d at 1259.

[7] *Id.* at 1260 (citation omitted).

[8] *See id.* at 1261 ("We characterize an injunction as mandatory if the requested relief affirmatively requires the nonmovant to act in a particular way, and as a result places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." (alterations and citation omitted)).

[9] GPP's prayer for relief in Count II is "judgment declaring that [GPP] had good cause for removing [Elk Energy ] as operator of the Lippelmann Lease; that [Elk Energy] was and is removed as operator of the Lippelmann Lease; and an order (1) requiring [Elk Energy] to transfer operations of the Lippelmann Lease to the operator of [GPP's] designation and (2) requiring [Elk Energy] to provide access to [GPP] of all records, equipment and such other information as reasonably related or necessary for the operation of the Lippelmann Lease." Doc. 1 at 11–12.

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."[10] There must be a showing that the injury is "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."[11] Further, "simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[12]

GPP's identified injury is speculative rather than certain and theoretical rather than actual. GPP asserts that the Lippelmann Lease's validity is in jeopardy if the Court does not impose the preliminary injunction to remove Elk Energy as the operator. GPP points out that a necessary condition for the perpetuation of the Lippelmann Lease is for oil and gas to be produced in paying quantities.[13] GPP argues that, because the operation costs charged by Elk Energy have exceeded GPP's share of the revenue since May 2025, GPP's leasehold could be deemed as not producing in paying quantities. And if the Lippelmann Lease is deemed as not producing in paying quantities, GPP's rights as a working interest owner under the Lippelmann Lease could be extinguished in accordance with the habendum clause of the lease.[14] But this concern is an outcome contingent on at least two factors.

---

[10] *Schrier*, 427 F.3d at 1267 (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)).

[11] *Id.* at 1267 (quoting *Heideman*, 348 F.3d at 1189).

[12] *Id.*

[13] *See Pray v. Premier Petroleum, Inc.*, 233 Kan. 351, 662 P.2d 255, 257 (1983) (noting that the condition that an oil or gas lease must produce in paying quantities necessary to perpetuate the lease is implicit in a typical habendum clause).

[14] *See Levin v. Maw Oil & Gas, LLC*, 290 Kan. 928, 234 P.3d 805, 809 (2010) ("Modern oil-and-gas leases typically provide for a primary term—a fixed number of years during which the lessee has no obligation to develop the premises—and a secondary term (for 'so long thereafter as oil and gas produced') once development takes place." (quoting *Habendum Clause*, Black's Law Dictionary 778–79 (9th ed. 2009))).

First, it must be determined that the Lippelmann Lease is not producing in paying quantities. At the motion hearing, Elk Energy offered testimony that reviewing the Lippelmann Lease's annual performance, as opposed to just the last five to six months, arguably confirms that the Lippelmann Lease is producing in paying quantities. As such, a conclusion that the Lippelmann Lease could be deemed as not producing in paying quantities is speculative rather than certain. Second, even if the Lippelmann Lease was determined to no longer be producing in paying quantities, Elk Energy offered a document from the Lessor indicating that the Lessor had no intention of terminating the Lippelmann Lease pursuant to the habendum clause. As such, the injury feared by GPP is theoretical rather than actual.

Finally, at root, the injury identified by GPP is more akin to "simple economic loss" that are "compensable by money damages."[15]

Because GPP cannot show that it will imminently suffer a certain injury should the Court decline to enjoin Elk Energy in the manner requested, GPP fails to meet its burden to sustain the extraordinary remedy it requests.

**IT IS THEREFORE ORDERED** that GPP's Motion for Preliminary Injunction (Doc. 25) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 8th day of January, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[15] *Schrier*, 427 F.3d at 1267.